## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRESENIUS USA MANUFACTURING, INC., | ) ) ) | CASE NO: 1:21-cv-11597 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DANA GORDON dba IGNITE | ) ) ) | |
| Defendant. | ) ) | September 28, 2021 |
| _____ | ) | |

## COMPLAINT

The plaintiff, Fresenius USA Manufacturing, Inc., for its claims alleges as follows:

## PARTIES & JURISDICTION

1.       Plaintiff Fresenius USA Manufacturing, Inc. ("FUSA") is a corporation organized under the laws of Delaware with its principal place of business in Waltham, Massachusetts. Pursuant to 28 U.S.C. § 1332(c)(1), FUSA is a citizen of Delaware and Massachusetts.

2.       Defendant Dana Gordon dba Ignite ("Gordon"), who upon information and belief uses the websites http://layingaround.com and www.ignitemedsupply.com, is a natural person and, upon information and belief, is a resident of, domiciled in, and a citizen of South Carolina. Pursuant to 28 U.S.C. §1332(a), Gordon is a citizen of South Carolina.

3.       There is complete diversity of citizenship among the parties to this case, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This court, therefore, has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

## SUBSTANTIVE ALLEGATIONS

4.       FUSA and its affiliates are world leaders in kidney care, dialysis, and dialysis related products. FUSA's affiliates operate more than 2,600 dialysis centers and employ more than

70,000 people, many in patient facing positions. As a result, FUSA and its affiliates require significant volumes of personal protective equipment ("PPE"), including disposable gloves.

5.      In 2020 and the first half of 2021, FUSA issued a series of purchase orders to Gordon for millions of boxes of nitrile gloves (the "Purchase Orders").

6.      Each Purchase Order included attached Purchase Order Terms and Conditions ("Terms and Conditions").

7.      With respect to delivery, the Terms and Conditions clearly state that "[t]ime is of the essence."  The Terms and Conditions state further: "In addition to Buyer's other rights or remedies, all or any portion of this Order are, at Buyer's option, subject to cancellation, refusal and redelivery without liability on Buyer's part if delivery is not made as or when specified or within a reasonable time if not specified."

8.      The Terms and Conditions state further that, "Seller shall not assign orally, in writing or by operation of law, in whole or in part, to any person, firm, corporation or governmental agency, its rights, interests or obligation under this Order without permission of Buyer."

9.      The Terms and Conditions state further that, "Buyer shall be entitled to reimbursement from Seller for all reasonable costs and expenses, including reasonable attorney fees associated with the enforcement of any provision of this Order."

10.      FUSA and Gordon also executed a Certificate of NCNR / Compliance on or about December 21, 2020 in connection with the Purchase Orders.  In it, Gordon certified that the products it would supply "are genuine and authentic" and "will meet or exceed all standard product specifications stated in the manufactures [sic] data sheet."  It states further: "All product is guaranteed form, fit and function to the manufacturers [sic] (dec) specification sheet. All product must meet the expectations and regulation of the FDA for Fresenius Medical Care to receive."

11.     The NCNR / Compliance states further: "Time is of the essence and Ignite shall notify Customer immediately of any situation which may delay or threaten to delay the timely performance of this Order. All or any portion of this Order are, at Customer's option, subject to cancellation, refusal and redelivery without liability on Customer's part if delivery is not made within 30 days from the date specified [i.e., December 21, 2020]."

12.     The NCNR / Compliance states further: "Except as provided in this document, the terms of the Purchase Order shall apply."

13.     On or about December 18, 2020, FUSA issued to Gordon Purchase Order 4511123758 for 1,100,000 boxes of Cranberry nitrile gloves.  The Purchase Order specified a delivery date of December 28, 2020.  The total purchase price of the Purchase Order was thirty-six million forty-seven thousand five hundred U.S. Dollars ($36,047,500.00).

14.     On or about December 18, 2020, FUSA also issued to Gordon Purchase Order 4511123756 and Purchase Order 4511123757 for Shun Thai nitrile gloves.  The total purchase price of Purchase Order 4511123756 was five million four hundred ninety-eight thousand eight hundred forty-eight U.S. Dollars ($5,498,848.00).  The total purchase price of Purchase Order 4511123757 was five million seven hundred seventy-four thousand eight hundred eighty U.S. Dollars ($5,774,880.00).

15.     On or about December 21, 2020, FUSA wired the total purchase price for Purchase Order 4511123758, Purchase Order 4511123756, and Purchase Order 4511123757 to Gordon.  In total, FUSA wired to Gordon on or about December 21, 2020 forty-seven million three hundred twenty-one thousand two hundred twenty-eight U.S. Dollars ($47,321,228.00).

16.     On or about January 11, 2021, Gordon informed FUSA that he would not be able to deliver the Cranberry nitrile gloves that FUSA had ordered pursuant to Purchase Order 4511123758.  Gordon never delivered any of the gloves ordered under this Purchase Order.

17.     FUSA demanded the return of the entire purchase price it had paid to Gordon for Purchase Order 4511123758.  Despite FUSA's demand, Gordon has returned only a portion of the purchase price.  Specifically, to date Gordon has returned approximately twenty-three million seven hundred thousand U.S. Dollars ($23,700,000.00), leaving an outstanding amount owed by Gordon to FUSA under Purchase Order 4511123758 of approximately twelve million three hundred forty-seven thousand U.S. Dollars ($12,347,000.00).

18.     On or about February 18, 2021, FUSA issued Purchase Order 4511144197 to replace Purchase Order 4511123756.  Purchase Order 4511144197 was for 909,600 boxes of Pure Glove nitrile gloves, and the total purchase price was eight million two hundred eighty-nine thousand five hundred sixty-eight U.S. Dollars ($8,289,568.00).

19.     On or about February 18, 2021, FUSA also issued Purchase Order 4511144198 to replace Purchase Order 4511123757.  Purchase Order 4511144198 was for 636,000 boxes of Pure Glove nitrile gloves, and the total purchase price was five million seven hundred seventy-four thousand eight hundred eighty U.S. Dollars ($5,774,880.00).

20.     As described above, on or about December 21, 2020, FUSA had wired to Gordon the total purchase price for Purchase Order 4511123758, Purchase Order 4511123756, and Purchase Order 4511123757 in the amount of $47,321,228.00.  Of that amount, $11,273,728 had been for Purchase Orders 4511123756 and 4511123757, which were later replaced by Purchase Orders 4511144197 and 4511144198.

21.     FUSA issued additional Purchase Orders in or about February and March 2021 for Medline and Pure Glove nitrile gloves.   The Purchase Order numbers are 4511143806, 4511144244, 4511145053, 4511147229, and 4511152547. The total purchase price of these additional Purchase Orders was, in the aggregate, one hundred nine thousand eight hundred eighty-three U.S. Dollars and forty U.S. Cents ($109,883.40).

22.     Gordon delivered only a small portion of the nitrile gloves ordered by FUSA pursuant to Purchase Orders 4511123756, 4511123757, 4511144197, 4511144198, 4511143806, 4511144244, 4511145053, 4511147229, and 4511152547.

23.     FUSA had paid Gordon $11,273,728 for Purchase Orders 4511123756, 4511123757, 4511144197, and 4511144198.   FUSA has demanded that Gordon return the outstanding balance of the purchase price for which Gordon did not deliver gloves.   Despite FUSA's demand, Gordon has failed to return the outstanding balance of the purchase price that FUSA paid to Gordon for gloves that Gordon never delivered.   Specifically, Gordon owes to FUSA and has failed to return approximately nine million seven hundred thousand U.S. Dollars ($9,700,000.00) pursuant to these Purchase Orders.

24.     In total, Gordon owes and has failed to return to FUSA approximately twenty-two million U.S. Dollars ($22,000,000.00).

## COUNT I – BREACH OF CONTRACT

25.     FUSA incorporates by reference paragraphs 1 through 24 above as if those paragraphs were fully set forth herein.

26.     The Purchase Orders constituted valid and enforceable contracts between FUSA and Gordon.

27.    Gordon failed to perform as required by those contracts, and Gordon's failures to perform constituted material breaches of the contracts.

28.    FUSA fully performed pursuant to the contracts and did not breach the contracts.

29.    Gordon's material breaches of the contracts excused any requirement that FUSA complete any of its remaining obligations under the contracts.

30.    As a direct and proximate result of Gordon's material breaches of the contracts, FUSA sustained damages, including but not limited to the unreturned sums that FUSA paid pursuant to the Purchase Orders, and other costs and damages, including but not limited to reasonable attorney's fees, in amounts to be proved at trial.

## COUNT II – UNJUST ENRICHMENT

31.    FUSA incorporates by reference paragraphs 1 through 24 above as if those paragraphs were fully set forth herein.

32.    FUSA pleads this count in the alternative to Count I.

33.    FUSA conferred a substantial benefit on Gordon through payments to Gordon.

34.    Gordon accepted those payments without providing anything of value in return, contrary to FUSA's expectations.

35.    It would be unjust, inequitable, and contrary to fundamental principles of justice, equity and good conscience to allow Gordon to retain the benefits that FUSA conferred on him without repayment to FUSA for the value Gordon received.  FUSA, therefore, should receive, and Gordon should return, the benefit FUSA has conferred on Gordon for which Gordon has not paid.

## COUNT III – VIOLATION OF CHAPTER 93A

36.    FUSA incorporates by reference paragraphs 1 through 24 above as if those paragraphs were fully set forth herein.

37.     Gordon is engaged in trade or commerce in Massachusetts within the meaning of M.G.L. c. 93A.

38.     FUSA also is engaged in trade or commerce in Massachusetts within the meaning of M.G.L. c. 93A.

39.     Gordon's conduct was unfair and deceptive in violation of M.G.L. c. 93A for the reasons described above and because, among other things, soon after FUSA issued to Gordon the purchase orders for Shun Thai nitrile gloves, Gordon called FUSA's representative, who was located in Massachusetts, to ask FUSA to cancel that agreement and agree to buy different gloves from a different supplier.  FUSA declined and told Gordon that if he insisted on using a different supplier, FUSA would cancel its agreement with Gordon.  Upon information and belief, which includes but is not limited to statements made by Gordon, Gordon switched to a different supplier anyway in direct violation of FUSA's expressly stated instructions and the Terms and Conditions of the Purchase Orders.  Upon further information and belief, which includes but is not limited to statements made by Gordon, Gordon switched to the different supplier because Gordon's relative worked for the supplier to which he switched.  Upon further information and belief, the supplier to which Gordon switched without FUSA's permission could not fulfill the order and, as described above, Gordon has neither delivered the product nor returned the entirety of the funds paid.

40.     The actions described above constitute unfair and deceptive acts and practices by Gordon, during the conduct of trade or commerce between Gordon and FUSA, in violation of Chapter 93A.  Gordon's actions were willful or knowing and done in bad faith in violation of Chapter 93A.

41.     The actions and transactions constituting the unfair or deceptive acts or practices described above occurred primarily and substantially within the Commonwealth of Massachusetts within the meaning of M.G.L. c. 93A.

42.     As a direct and proximate result of the actions of Gordon, FUSA has sustained damages in amounts to be proved at trial.

## COUNT IV – MONEY HAD AND RECEIVED

43.     FUSA incorporates by reference paragraphs 1 through 24 above as if those paragraphs were fully set forth herein.

44.     FUSA paid Gordon as described above with the expectation that Gordon would deliver to FUSA nitrile gloves of the type, of the value, and in the quantities described above.

45.     Gordon has not delivered to FUSA nitrile gloves of the type, of the value, and in the quantities described above, and the money that FUSA paid to Gordon should not in justice be retained by Gordon and/or his agents, as such money belongs to FUSA and in equity and good conscience should be repaid to FUSA.

46.     Gordon and/or his agents, therefore, should repay to FUSA and FUSA should receive the money described above which belongs to FUSA.

## COUNT V – REACH AND APPLY INJUNCTION - THE PRIMEX ARBITRATION

47.     FUSA incorporates by reference paragraphs 1 through 24 and 39 above as if those paragraphs were fully set forth herein.

48.     Upon information and belief, Gordon has commenced an arbitration proceeding with the American Arbitration Association against Primex Clinical Laboratories, Inc. and Eric Garofano, AAA Case No. 01-21-0002-3419 (the "Primex Arbitration").

49.     Upon information and belief, Gordon claims in the Primex Arbitration that he ordered nitrile gloves from the respondents on January 6, 2021, he paid them $14,676,500.00, and he did not receive the gloves and was not refunded the amount paid.

50.     Upon further information and belief, Primex is the alternative supplier that Gordon switched FUSA's order to in direct contravention of FUSA's express instructions and the Terms and Conditions of the Purchase Orders, and Gordon's claims in the Primex Arbitration are directly related to FUSA's claims in this case.

51.     Accordingly, FUSA seeks a reach and apply injunction to reach any amounts that Gordon receives from Primex Clinical Laboratories, Inc. and/or Eric Garofano in connection with the Primex Arbitration or otherwise and to apply any such amounts to the outstanding balance that Gordon owes to FUSA as alleged in this Complaint.

## COUNT VI – REACH AND APPLY INJUNCTION

52.     FUSA incorporates by reference paragraphs 1 through 24 above as if those paragraphs were fully set forth herein.

53.     Upon information and belief, Gordon ordered nitrile gloves from an at-this-time unknown broker (the "Broker) to fulfill one or more orders placed by FUSA with Gordon.

54.     FUSA timely invoked the cancellation clause of the NCNR / Compliance and/or Purchase Orders, and Gordon has neither delivered the gloves nor refunded to FUSA the purchase price.

55.     Upon information and belief, Gordon is seeking to recover from the Broker the amounts paid, and Gordon's claims against the Broker are directly related to FUSA's claims in this case.

56.     Accordingly, FUSA seeks a reach and apply injunction to reach any amounts that Gordon receives from the Broker and to apply any such amounts to the outstanding balance that Gordon owes to FUSA as alleged in this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Fresenius USA Manufacturing, Inc., requests judgment against Defendant Dana Gordon dba Ignite and requests the following relief:

A.     Compensatory damages, reasonable attorneys' fees and costs pursuant to Count One;

B.     The recovery of amounts wrongfully retained by Gordon pursuant to Count Two;

C.     Compensatory damages, treble damages, reasonable attorneys' fees and costs pursuant to Count Three;

D.     The recovery of amounts unjustly retained by Gordon and/or his agents pursuant to Count Four;

E.     Injunctive relief pursuant to Count Five;

F.     Injunctive relief pursuant to Count Six;

G.     Prejudgment interest;

H.     Post-judgment interest;

I.     All reasonable costs and expenses, including but not limited to reasonable attorney's fees;

J.     Such other and further relief, in law and at equity, as the Court deems just and proper.

## JURY DEMAND

FUSA respectfully demands a jury trial on all causes and issues so triable.


Respectfully submitted,                    FRESENIUS USA MANUFACTURING, INC.


By: */s/ Joseph C. Merschman*
Joseph C. Merschman (BBO# 652527)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel. 203.498.4400
Fax 203.782.2889
jmerschman@wiggin.com

*Attorneys for Plaintiff*

11